**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | |
|---|---|
| MARRIELL SPROAPS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 4:23-CV-01243 RLW |
| | ) |
| SSM HEALTH ST. LOUIS UNIVERSITY HOSPITAL, | ) |
| | ) |
| Defendant. | ) |

**MEMORANDUM AND ORDER**

This matter is before the Court on review of plaintiff's amended complaint. Having previously granted plaintiff's application to proceed *in forma pauperis* in this action (ECF No. 2), the Court will now review the amended complaint under 28 U.S.C. § 1915. After careful review, the Court will dismiss plaintiff's claims for intentional infliction of emotional distress, harassment, deprivation of rights, conspiracy, and depression.

**28 U.S.C. § 1915(e)**

Under 28 U.S.C. § 1915(e)(2), the Court may dismiss a complaint filed *in forma pauperis* if the action is frivolous or malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief against a defendant who is immune from such relief. When reviewing a complaint filed by a self-represented person under 28 U.S.C. § 1915, the Court accepts the well-pleaded facts as true, *White v. Clark*, 750 F.2d 721, 722 (8th Cir. 1984), and liberally construes the complaint. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *Haines v. Kerner*, 404 U.S. 519, 520 (1972). A "liberal construction" means that if the essence of an allegation is discernible, the district court should construe the plaintiff's complaint in a way that permits the claim to be considered within the proper legal framework. *Solomon v. Petray*, 795 F.3d 777, 787 (8th Cir. 2015). Even

so, self-represented plaintiffs must allege facts which, if true, state a claim for relief as a matter of law. *Martin v. Aubuchon*, 623 F.2d 1282, 1286 (8th Cir. 1980); *see also Stone v. Harry*, 364 F.3d 912, 914-15 (8th Cir. 2004) (refusing to supply additional facts or to construct a legal theory for the self-represented plaintiff).

To sufficiently state a claim for relief, a complaint must plead more than "legal conclusions" and "[t]hreadbare recitals of the elements of a cause of action [that are] supported by mere conclusory statements." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A plaintiff must demonstrate a plausible claim for relief, which is more than a "mere possibility of misconduct." *Id.* at 679. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678. Determining whether a complaint states a plausible claim for relief is a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. *Id.* at 679.

**Background**

Plaintiff is self-represented in this matter. He filed his complaint on October 3, 2023, along with an application to proceed without prepaying fees or costs under 28 U.S.C. § 1915. (ECF Nos. 1, 2). The Court granted plaintiff's application on October 17, 2023, but explained that plaintiff's complaint lacked sufficient factual support. (ECF No. 6). In light of plaintiff's self-represented status, the Court gave plaintiff thirty (30) days to file an amended complaint. (ECF No. 6). Plaintiff did so on October 26, 2024. (ECF No. 7).

**The Amended Complaint**

In the section of the form complaint designated for plaintiff to state his basis for jurisdiction, plaintiff indicates he is bringing this action under:

> 42 U.S.C. § 1395dd – EMTALA
> 18 U.S.C. § 242 – Deprivation of Rights Under Color of Law

2

> § 565.090 Harassment
> 18 U.S.C. § 241 – Conspiracy Against Rights
> Mo. Code Regs. Title 17 § 20-2.065

(ECF No. 7). In an attachment to his amended complaint, Plaintiff lists his specific claims as follows: (1) assault, (2) violation of EMTALA, (3) harassment, (4) emotional distress, and (5) depression. (ECF No. 7-3). He seeks $1.6 million in damages and an order from this Court enforcing his "civil rights to the fullest extent of the United States Constitution, and the law[.]" (ECF No. 7).

Plaintiff states that he visited defendant SSM Health St. Louis University Hospital on January 10, 2023, at around 5:00 p.m. *Id.* Plaintiff checked in and asked to speak with a doctor in a private setting. *Id.* Plaintiff asserts that while he was waiting, he witnessed "a different patient being violently escorted out." *Id.* Plaintiff contends that he tried to "deescalate the situation because [he] was concerned about the other patient's safety." *Id.* After returning to his seat, plaintiff reports that security officers asked him to leave because the officers incorrectly believed plaintiff had recorded their encounter with the other patient. (ECF No. 7-3). He states that the officers "physically assaulted" him and "threw him out [of] the hospital." (ECF No. 7). Plaintiff alleges that the officers threatened further violence even after he was outside of the hospital. *Id.* Plaintiff reports that he then returned home, where he started feeling "down and weak." *Id.* Plaintiff called an ambulance and was taken to St. Mary's Hospital. *Id.* Plaintiff states that the staff at St. Mary's uncovered several abnormalities in his blood and urine. (ECF No. 7-3). Plaintiff attached the test results to his amended complaint. *Id.*

## Discussion

### 1. EMTALA

Congress enacted EMTALA to "address a distinct and rather narrow problem—the 'dumping' of uninsured, underinsured, or indigent patients by hospitals who did not want to treat

3

them." *Summers v. Baptist Med. Ctr. Arkadelphia*, 91 F.3d 1132, 1136 (8th Cir. 1996). EMTALA imposes two requirements on hospitals with emergency departments: (1) to provide "an appropriate medical screening examination" for any individual who comes to its emergency room seeking treatment to determine whether the individual has an emergency medical condition; and (2) if such a condition exists, to stabilize the condition prior to transferring or discharging the patient. 42 U.S.C. § 1395dd(a).

Under EMTALA, an emergency medical condition is characterized "by acute symptoms of sufficient severity (including severe pain)" that, without immediate medical attention, could reasonably result in:

> (i) placing the health of the individual (or, with respect to a pregnant woman, the health of the woman or her unborn child) in serious jeopardy,
> (ii) serious impairment to bodily functions, or
> (iii) serious dysfunction of any bodily organ or part[.]

42 U.S.C. 1395dd(e)(1).

If a hospital concludes that an individual is experiencing an emergency medical condition, it must provide: "(A) within the staff and facilities available at the hospital, for such further medical examination and such treatment as may be required to stabilize the medical condition, or (B) for transfer of the individual to another medical facility in accordance with subsection (c) [restricting transfers until individual stabilized]." *Id.* at § 1395dd(b). If a hospital does not meet these requirements, EMTALA provides a private right of action that allows a harmed individual to recover personal-injury damages according to the law of the state where the hospital is located. *Id.* at § 1395dd(d)(2)(A). EMTALA does not, however, create a federal cause of action for medical malpractice in emergency rooms. *Summers*, 91 F.3d at 1137.

Liberally construing the amended complaint, plaintiff asserts a plausible claim for relief under EMTALA. Plaintiff asserts he was experiencing several medical abnormalities when he

4

visited SSM Health on January 10, 2023. (ECF No. 7-3). The lab results from St. Mary's—which were based on blood and urine samples taken from plaintiff on that date—appear to support plaintiff's assertion. *Id.* Plaintiff further asserts that he presented with a serious impairment to bodily function but was not given an appropriate medical screening. *Id.* Unlike the factual allegations in plaintiff's initial complaint, the allegations in plaintiff's amended complaint allow the Court to draw the reasonable inference that the defendant may be liable under EMTALA. *Iqbal*, 556 U.S. at 678. Thus, the Court will not dismiss plaintiff's EMTALA claim at this early stage of the litigation.

**2. Assault**

To plead a claim for civil assault under Missouri law, a plaintiff must allege: (1) the defendant's intent to cause bodily harm or offensive contact, or apprehension of either; (2) conduct of the defendant indicating such intent, and (3) apprehension of bodily harm or offensive contact by the plaintiff caused by the defendant's conduct. *Devitre v. Orthopedic Ctr. of St. Louis, LLC*, 349 S.W.3d 327, 335 (Mo. 2011) (en banc) (citation omitted). Under the doctrine of *respondeat superior*, an employer may be liable for an employee's tortious conduct if the conduct is: "(1) within the scope of employment[,] and (2) done as a means or for the purpose of doing the work assigned by the principal." *Tashman v. Advance Auto Parts, Inc.*, 63 F.4th 1147, 1153 (8th Cir. 2023) (citing *Gibson v. Brewer*, 952 S.W.2d 239, 245-46 (Mo. 1997) (en banc)).

Here, plaintiff asserts that one security officer grabbed his right arm and another grabbed his left. (ECF No. 7-3). Plaintiff states that the officers "threw [him] out [of] the hospital." (ECF No. 7). Plaintiff further alleges that the officers chased and threatened him until he left the premises. (ECF No. 7-3). Accepted as true, these allegations present a plausible claim of assault. Liberally construed, they support a reasonable inference that the officers acted within the scope of

5

their employment and for the purpose of doing work assigned by the defendant. Thus, as with plaintiff's EMTALA claim, the Court will not dismiss plaintiff's assault claim at this early stage.

### 3. Intentional Infliction of Emotional Distress

To plead a claim of intentional infliction of emotional distress under Missouri law, a plaintiff must allege: "(1) the defendant [acted] intentionally or recklessly; (2) the defendant's conduct [was] extreme and outrageous; and (3) the conduct [caused] (4) severe emotional distress." *Pujols v. Pujols Fam. Found.*, No. 4:16-CV-1644 CAS, 2017 WL 4310436, at *8 (E.D. Mo. Sept. 28, 2017), *aff'd*, 721 F. App'x 567 (8th Cir. 2018) (citation omitted). To satisfy the first factor, the conduct must have been "intended only to cause extreme emotional distress to the victim." *Gibson v. Brewer*, 952 S.W.2d 239, 249 (Mo. 1997) (citation omitted). To satisfy the second factor, the conduct must have been "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Id.* (citation omitted). As with assault, the doctrine of *respondeat superior* may extend liability to an employer. *Tashman*, 63 F.4th at 1154.

Here, plaintiff's allegations fall short. While there can be little doubt that the officers' conduct caused some level of emotional distress to plaintiff, the facts alleged do not indicate that the conduct went beyond all possible bounds of decency or that the officers acted with the sole intent of causing plaintiff extreme emotional distress. Put another way, plaintiff's amended complaint—accepted as true—does not state a plausible claim of intentional infliction of emotional distress. Thus, the Court will dismiss this claim.

### 4. Harassment, Deprivation of Rights, Conspiracy, and Depression

Plaintiff's remaining claims are also deficient. For his claim of harassment, plaintiff relies solely upon Missouri Revised Statutes § 565.090. (ECF Nos. 7; 7-3). While § 565.090 makes it a crime to engage in conduct for the purpose of causing emotional distress, there is no indication in

6

the language of the statute that the Missouri legislature intended to also create a civil cause of action. *See Christy v. Petrus*, 295 S.W.2d 122, 126 (Mo. 1956) (en banc) ("[A] statute which creates a criminal offense and provides a penalty for its violation, will not be construed as creating a new civil cause of action independently of the common law, unless such appears by express terms or by clear implication to have been the legislative intent."). Thus, the Court will dismiss plaintiff's harassment claim for failure to state a claim upon which relief can be granted.

Plaintiff's amended complaint also cites Title 17, § 20-2.065 of the Missouri Code of State Regulations, which establishes the arrest powers of licensed private security officers in the City of St. Louis. Plaintiff does not explain how this regulation authorizes any of his claims and the Court notes he does not allege that the Defendant's security officers arrested him. "The Code of State Regulations (CSR) is published by the Missouri Secretary of State and contains the full text of all rules of State agencies." *Noss v. Abrams*, 787 S.W.2d 834, 837 (Mo. Ct. App. 1990) (citation omitted). Title 17 CSR § 20-2.065 is a regulation adopted under the authority of Missouri Revised Statutes § 84.340, which authorizes the St. Louis Board of Police Commissioners to regulate and license private security officers. The rulemaking power set out in the regulation "is granted for a limited purpose, which does not include a delegation of legislative power to establish a private cause of action for damages for violations of its rules." *Noss*, 787 S.W.2d at 838; *see also Vilcek v. Uber USA, LLC*, 902 F.3d 815, 820 (8th Cir. 2018) (citing <u>Noss</u> as holding that Missouri state regulations do not establish private rights of action). As a result, Title 17 CSR § 20-2.065 does not provide a basis for a civil cause of action, and the Court will dismiss any claim based on the regulation for failure to state a claim upon which relief can be granted.

Plaintiff relies on two federal criminal statutes for his "deprivation" and "conspiracy" claims. Specifically, plaintiff attempts to establish civil liability through 18 U.S.C. §§ 241 and 242. (ECF Nos. 7; 7-3). Courts have consistently held that these statutes do not create private rights of

7

action. *See, e.g., Brown v. Express Scripts*, No. 4:17-CV-866 HEA, 2018 WL 1295482, at *2 (E.D. Mo. Mar. 13, 2018) (dismissing plaintiff's claim brought under 18 U.S.C. § 242 because plaintiff had no private right of action); *Nawrocki v. Bi-State Dev.*, No. 4:18-CV-01034 JCH, 2018 WL 4562908, at *5 (E.D. Mo. Sept. 24, 2018) (collecting cases). Thus, the Court will also dismiss plaintiff's "deprivation" and "conspiracy" claims for failure to state a claim upon which relief can be granted.

Finally, plaintiff appears to assert a claim for "depression." While the presence of such a condition may be relevant to a claim for intentional infliction of emotional distress, the Court is unaware of any statute or precedent that makes depression itself a standalone cause of action. Thus, to the extent plaintiff intends to assert a claim based solely on the existence of the condition of depression, that claim must be dismissed for failure to state a claim upon which relief can be granted.

## Conclusion

Having liberally construed plaintiff's amended complaint, the Court finds that plaintiff has sufficiently stated a claim under EMTALA. The Court also finds that plaintiff has sufficiently stated a claim for assault under applicable Missouri state law. The same is not true for plaintiff's other claims, which do not survive initial review under 28 U.S.C. § 1915(e)(2)(B) and will be dismissed without prejudice for failure to state a claim upon which relief can be granted.

Accordingly,

**IT IS HEREBY ORDERED** that plaintiff's claims for intentional infliction of emotional distress, harassment under Missouri Revised Statutes § 565.090, deprivation of rights, conspiracy, depression, and claims pursuant to Title 17 SCR § 20-2.065 and 18 U.S.C. §§ 241 and 242, are **DISMISSED without prejudice** for failure to state a claim upon which relief can be granted.

8

**IT IS FURTHER ORDERED** that the Clerk of Court shall issue process or cause process to issue as to defendant SSM Health St. Louis University Hospital, at CT Corporation System, 120 S. Central Avenue, St. Louis, Missouri 63105 on plaintiff's EMTALA and state law assault claims only.

An Order of Partial Dismissal will accompany this Memorandum and Order.

*/s/ Ronnie L. White*
**RONNIE L. WHITE**
**UNITED STATES DISTRICT JUDGE**

Dated this 17th day of January, 2024.